CAMP & KEMP *et al.*, plaintiffs in error, *vs.* S. MAYER, assignee, *et al.*, defendants in error.

1. An analysis of sections 3042, 3082, 3083, 4143, and 4144, of Irwin's Revised Code, shows that when an auditor or master in chancery makes a report upon matters of account referred to him, the party against whom the report operates may file two classes of exceptions: first, for alleged errors of law on the part of the referee; secondly, for alleged errors in his report as to the facts found. The first is for the exclusive consideration of the Court, under section 3083. The facts found by the report are for the consideration of the Court in the first instance, after which, if approved by him, the report becomes *prima facie* evidence of their truth, subject to be overthrown by testimony before the jury.

2. On the trial of issues raised by exceptions to an auditor's report, which has been approved by the Judge, the facts reported will be taken as true, unless rebutted by evidence, or unless the record shows that evidence to rebut them was offered and illegally rejected by the Court.

3. An assignment for the benefit of creditors by an insolvent debtor, the terms of which contemplate that it is to be signed by all the creditors, is binding on none unless all sign.

4. Where such an assignment has been agreed to by a portion of the creditors, who file a bill to enjoin other creditors, (whose claims are in judgment, and who are proceeding to levy on the property assigned,) and compel them to come in under the assignment, an assent by the latter to an order granting the injunction, appointing a receiver, and, also, an auditor, to audit the accounts and report upon their amounts and priorities, will not amount to an assent by the levying creditors to the assignment, even though they may not have filed any plea, dumurrer, or answer to the bill.

5. If the Judge holds, erroneously, that an assignment partially executed, as above indicated, is the law of the case, but that by its provisions, the assets were to be divided according to legal priorities, and the judgment of the Court, (to whom both the law and facts were, by agreement, submitted without a jury,) so divides them, this Court will not grant a new trial, even though the construction of the terms of the assignment by the Judge was incorrect, and there was no exception taken by the opposite party to his ruling, that the assignment was the law of the case.

Camp & Kemp *et al. vs.* Mayer *et al.*

6. Laborers' liens, under the Constitution, attach from the time of the performance of the labor. Their inception is not postponed until foreclosure.

7. Partnership assets must first satisfy partnership debts, before individual debts, or debts of a former partnership of which one of the present firm was a member, can be paid.

8. Where an exception to an auditor's report directly contradicts the report, the former should be supported by proof.

9. It is not necessary, under our practice, that an auditor should append to his report the evidence on which it is based.

WARNER, Chief Justice, dissented.

Exceptions to report of auditor or master. Chancery practice. Laborer's and mechanic's lien. Partnership assets. Assignment by insolvent debtor. Before Judge STROZIER. Dougherty Superior Court. May Adjourned Term, 1872.

For the facts of this case, see the opinions.

D. H. POPE; HINES & HOBBS, for plaintiffs in error.

VASON & DAVIS; G. J. WRIGHT; L. P. D. WARREN; F. M. HARPER, by CLARK & GOSS, for defendants.

MONTGOMERY, Judge.

In October, 1871, Schaub & Lawton, contractors on the Brunswick and Albany Railroad, failed. On the 31st of October, they made an assignment of all their property for the benefit of their creditors, of which instrument the following is a copy:

"GEORGIA—DOUGHERTY COUNTY:

"This indenture, made between George Schaub and Henry R. Lawton, parties using the firm name and style of Schaub & Lawton, of the one part, and Samuel Mayer, of the second part, and the creditors of Schaub & Lawton, of the third part, witnesseth, that the said Schaub & Lawton, for and in consideration of the sum of $1 00, to them in hand paid, and for

the payment of all their just debts, and to prevent waste of their valuable property by useless litigation, being themselves unable to meet their obligations by the unexpected failure of H. I. Kimball & Company, do hereby give, grant, assign, and transfer to Samuel Mayer, of Dougherty county, in said State, and his assigns, the following property: Two work horses, one roan and one dun; thirty-eight mules—(these mules and horses in possession of the employees of said Schaub & Lawton, on the line of the Brunswick and Albany Railroad, from Albany to the end of their line, in Randolph county, but to be assembled at one place near Albany;) also, one four-horse wagon and harness, (four sets;) four two-horse wagons, and two sets of harness for each wagon; thirty-six working dump carts, and one set of harness for each cart; one steam engine and fixtures and appurtenances, consisting of boiler, shafting, etc.; three pile drivers and appurtenances, (one at Chickasawhachie, two at Tallahassee;) one lot carpenter's tools; thirty-five tents, now in possession of their hands; one large lot of grading tools, consisting of shovels, picks, mattocks, wheelbarrows, axes, hoes, etc., used by their hands; one large lot of cooking utensils; one large lot of commissary utensils, such as scales, knives, etc.; two sets blacksmith's tools—all of which property is scattered on the line of the said Brunswick and Albany Railroad, on their work as aforesaid. To have and to hold said property to him, said Samuel Mayer, upon trust, to advertise thirty days for all claims against said firm of Schaub & Lawton, and upon ten days' notice, to sell said property, at public or at private sale, as said Mayer may determine to be best; and upon such sale, to equally divide the proceeds thereof between said creditors of Schaub & Lawton, and take up said claims (as a voucher for himself,) to the amount thereof, deducting all expenses incurred by him; and the said Mayer, on his part, accepts this trust, and agrees to carry it out effectually and faithfully. And all of the creditors of said Schaub & Lawton agree to this assignment, as witness their signatures thereto; but said Mayer proceeds and sells said property, whether they consent or not.

" In witness, the parties have hereto set their hands and seals, this the 31st day of October, 1871.

" Attest :

"R. K. HINES, N. P. [L. S.]

(Signed)     "SCHAUB & LAWTON,          [L. S.]

               "G. J. WRIGHT,            [L. S.]

                   " Attorney· for Speight, Sullivan *et al.*

               "SAMUEL MAYER & COMPANY,     [L. S.]

               "VASON & DAVIS,           [L. S.]

                   " Attorney for Walker & Kindrick.

               "CAMP & KEMP,            [L. S.]

               "ATKINSON & COMPANY *et al.*,     [L. S.]

               "F. M. HARPER, per D. A. VASON, [L. S.]

                       " For Dawson creditors."

On their failure, sundry laborers, either in their own immediate employment or that of their sub-contractors, sued out *fi. fas.* on their alleged laborers' liens, under the Act of 1869—many, if not all of them, before an Ordinary. The assignment was not signed by all of the judgment creditors of Schaub & Lawton. Upon the suing out and levy of the laborers' *fi. fas.*, the assignees and certain creditors, who had signed the instrument, filed a bill to carry out the assignment, and praying an injunction against the levying creditors, alleging that, " your orators had well hoped that said parties (meaning the levying creditors) would not have acted thus to defeat the very object in making such assignment, but would have come in and accepted their debts under said assignment. But now so it is, may it please your honor, that the said parties and their confederates, on first one pretense and then another, continue their illegal course, and refuse to "—*i. e.*, refuse· to accede to the terms of the assignment. Some of the creditors, after the bill was filed, seem to have come in and signed it. All never did. The bill also prayed the appointment of a receiver. No answer was filed, but all the creditors, including one holding a United States Court *fi. fa.*, issued on a judgment obtained April 22d, 1869, against Mosher, Thomas & Schaub,

(of which firm Schaub was formerly a member,) came in by their counsel and agreed to an order granting the injunction as prayed for, appointing a receiver, and that an auditor be appointed to hear proof of the amount and priority of each claim. The auditor, after hearing evidence, made his report, in which he says "he has carefully examined and weighed *all the evidence* submitted to him by the parties in interest. This evidence consisted principally of the claimants, defendants, the clerks of defendants, *the books of defendants*, the evidence of sub-contractors, and documentary evidence." His finding is in favor of the priority of the laborers' liens. To that report, the following exceptions were filed :

"S. MAYER *vs.* SCHAUB & LAWTON.

"And now comes Hines & Hobbs, attorneys for sundry creditors, and file the following exceptions to the said report of the said auditor:

"1st. Because said fund coming into Court under a deed of assignment, all creditors claim *pro rata* under that deed, and after paying Court cost, auditor's fees and attorney's fees, there is no preference or priority in favor of any creditor, but they must all come in *pro rata*, and so much of said report as gives any preference is illegal.

"2d. Because if there is any priority or preference, the lien of the *fi. fa.* of John Vogt & Company *vs.* Mosher, Thomas & Schaub, dated 1st November, 1869, for $2,315 05, is the oldest lien against said G. Schaub, and should be paid before any other debt whatever in said case and said auditor's report, giving no lien to said *fi. fa.*, is illegal.

"3d. That said laborer's liens have no lien, except from the date of their foreclosure, and being subsequent to the assignment, which carried the title out of Schaub, they have no lien in this case, and that said lien *fi. fas.* are illegally issued, being issued by the Ordinary of Terrell county, who had no authority to issue them.

"4th. That said report does not show any testimony, show-

ing that the said pretended liens were in favor of persons who absolutely or by themselves did the work.

"5th. And for further objections to the auditor's report, we say that the evidence showed that the most of the laborers were the hands of the sub-contractors, and if they had any lien they only had a lien upon the property of the sub-contractors and not a lien upon the property of Schaub & Lawton.

"6th. That it appeared by the testimony of G. Schaub and R. A. Hatcher before said master, that the laborers who claimed a lien on said firm of Schaub & Lawton worked for W. L. Burgay and other sub-contractors, that they did not work for Schaub & Lawton, but Schaub & Lawton gave due bills for the amounts by Hatcher, agent, and assumed the debts, and charged the amounts to each sub-contractor on their books."

"EXCEPTIONS TO AUDITOR'S REPORT.

"*Samuel Mayer, assignee, Camp & Kemp, Speight et al. vs. J. W. Kemp, sheriff, and Atkinson & Company, of Dougherty county, sheriff of Terrell, and sheriff of Randolph.*

"BILL FOR INJUNCTION, ETC., DOUGHERTY SUPERIOR COURT.

"And now comes Samuel Mayer, Kemp & Camp, and ...... Speight and except to the report of the auditor, William E. Smith, on the following grounds:

"1st. Because the assignment made by defendants transferred the property to the creditors generally, without any preference or priority to any party, but to be equally distributed among all the creditors; that no lien of a laborer or mechanic having been foreclosed prior to said assignment, the liens by the terms of assignment were lost, and they, therefore, except to the report so far as it prefers the laborer or mechanic to other creditors.

"2d. Because the report allows the laborers a priority over exceptors, when the claims are for provisions furnished—material furnished, and stand on the same footing with laborers, even without assignment.

"3d. Because the report allows the laborers and mechanics more than are really due them, and we except to the report on

that ground, and further, because the auditor refused to allow proof as to the amount due the laborers by the introduction of the original books of entry of defendants, the same being made up from the weekly reports of the foremen in the employ of defendants—the foremen having scattered to parts unknown and their evidence not being at the time attainable.

"G. J. WRIGHT,
"D. H. POPE,
"HINES & HOBBS,
"Exceptors' attorneys."

"And now comes Camp & Kemp and other creditors of Schaub & Lawton, and by way of amendment to their exceptions, filed for further exception, say:

"1st. That said report fails to furnish the evidence on which the auditor allowed the claims reported in the case of each and every laborer, mechanic and carpenter—that it simply calls the claimant a mechanic, laborer, overseer or carpenter, without giving the proof necessary to constitute such a vocation or occupation—that such a thing as a laborer and other occupations cannot be made to exist by imagination in the Courts, but the fact must be made to appear by competent proof, which the report fails to show, and on which point this Court could make no decision without the evidence, and that those laborers were laborers of sub-contractors.

"2d That if the evidence was appended to the report it would show that nearly or all the laborers or a great many of them were the laborers of sub-contractors, and not employed by Schaub & Lawton, and that Schaub & Lawton were not directly interested or liable for the payment of the hands, and that the auditor erred in allowing the lien.

"3d. That Schaub & Lawton were not directly liable for the wages due laborers of sub-contractors, and the evidence, if appended, would so show.

"4th. That the report should show all the evidence on each claim, so this Court could see that all the points were legally decided by the auditor, which it fails to do, and which evi-

Camp & Kemp *et al. vs.* Mayer *et al.*

dence the auditor failed to attach, and that the report fails to show that the deed of assignment was before the auditor, and the points made that the assignment gave all the property to the creditors equally, and that the creditors objected to any priority to laborers, and that there was an agreement that the creditors should have the money *pro rata.*

"D. H. POPE,
"G. J. WRIGHT,
"HINES & HOBBS,
Exceptors' Attorneys."

Which were submitted by agreement to the Court, without a jury, and were by him overruled, and the report made the judgment of the Court.

It does not appear that any evidence was offered to sustain the exceptions. Upon their being overruled the bill of exceptions was sued out, and among the assignments of error the following appears:

" 3d. That the Court after holding properly that the deed of assignment from Schaub & Lawton to Samuel Mayer was the law of the case as to priority, erred in construing the words ' *equally divide the proceeds between said creditors,*' in said deed of assignment to mean equally divide according to the priorities created by law, and then holding that Vogt & Company had no lien on the fund."

The question for this Court to determine, is whether the Court below erred in overruling each and every exception to the auditor's report, and in making it the judgment of the Court.

. I. To determine this, it is necessary to construe the 3042d, 3082d, 3083d, 4143d, and 4144th sections of the Code. An analysis of these somewhat conflicting sections results, it appears to me, as follows, where matters in issue are referred to a master or auditor:

1st. The referee is to hear evidence, investigate accounts, and report: Sections 3082, 4143.

2d. The report so made may be objected to on the ground

of illegal rejection or admission of evidence, or any other ground impeaching its propriety, which objections shall be heard and decided by the Court. The report, if accepted by the Court, is to be admitted, on the trial before the jury, as evidence, "with such instructions, as to the effect to be given to it, as the Court shall give under the circumstances of each case:" Section 3083.

3d. After allowance by the Court, the report is, *prima facie,* the truth as to the facts reported, but the party against whom it operates may file his exceptions within the time allowed by the Court, and the truth or falsity of the facts found by the report is submitted to a jury, who are to pass upon each exception, so far as it excepts to the facts reported, *seriatim:* Sections 3042, 4144. What are the "objections" to be heard and decided by the Court under section 3083? None but errors of law, on the part of the master, as I understand it. No other reading suggests itself which will reconcile this section with sections 3042 and 4144. The latter part of the section would seem to warrant this interpretation. The report, when finally accepted by the Court, shall be admitted as evidence to the jury, with such instructions as to *the effect* to be given to it as the Court shall give under the circumstances of each case. Exceptions, then, to a master's or an auditor's report, are of two classes: first, exceptions for alleged errors of law; secondly, exceptions for alleged errors of fact. Upon the first, the Court alone is to pass, under section 3083. Upon the second, the Court passes, in the first instance, when, if approved by him, they are, *prima facie,* true, subject to be overturned by testimony before the jury. In practice, I have never known, where the exceptions are to facts found, the exceptions formally submitted to the Court for its approval, in the first instance, as required by section 3042. The proceedings are always conducted under section 4144, which does not require the exceptions to be approved by the Court in the first instance. This may be accounted for by the fact, that a reference is seldom had, unless the case involve matters of account, and section 4141 applies specially to that class of cases. A part of

the exceptions in this case come under one of the two classes above mentioned, and a part under the other. The exceptions for.alleged error of law on the part of the auditor, may be thus stated :

1st. Because he found the assignment invalid as against creditors claiming liens ; or, which is the same thing, because he interpreted the assignment as providing for a division among the creditors according to the priorities established by law.

2d. Because he found against the priority of the United States Court execution over all others, and especially found it inferior to the laborers' liens.

3d. Because he found that the laborers' lien attached from the date of the work done, and was not postponed until foreclosure, and that the foreclosure before the Ordinary was legal.

4th. Because the auditor refused to allow proof, as to the amount due to the laborers, by the introduction of the original books of entry of Schaub & Lawton.

5th. Because the auditor failed to attach to his report the evidence upon which it is founded. The exceptions to the facts found are numerous, but may be classed under one head, to-wit : because the finding is contrary to the evidence.

II. I will dispose of the last first. If it be true that any, or many, of the findings upon the facts are untrue, the report was only *prima facie* evidence of their truth, and the objectors should have introduced, or offered to introduce, proof to rebut it. The record fails to show any such effort on their part.

III. Was any error of law committed by the auditor ? If he held the assignment invalid, I think the ruling correct, because by its terms it could only be binding on any one when signed by all the creditors. The bill itself states that many refused to sign. Some signed after the filing of the bill, but all never have signed. If one refuse, it fails to bind any. If the auditor held the assignment valid, but gave an erroneous interpretation to it, to-wit : that under it the debts were to be paid according to legal priorities, the error is immaterial—a correct result is arrived at.

IV. But it is said the bill having been filed to carry the assignment into effect, and the contesting creditors having come in under it, and agreed to be enjoined and to refer to an auditor, they must be taken to have assented to the assignment. I cannot see this. They were brought into Court by compulsory process. As I view it, the consent order was solely intended to expedite the case, no one waiving any rights not embraced in the order. The bill seeks to enjoin the levying creditors upon the express ground that they *refuse* to agree to the assignment. The consent to this order can hardly commit them more than a demurrer to the bill would have done, and this would only admit that they did refuse to be bound by the assignment. Again, how can this consent order commit the defendants to an equal division of the proceeds of the property any more than it commits their opponents to a division according to legal priorities? The order requires the auditor to report upon the legal priorities of the debts. Where the necessity of such a report if all had agreed to an equal division? Indeed, the main object of the reference seems to have been the ascertainment of the legal priorities. No difficulty appears to have existed in ascertaining the *amounts* of the various claims; for the auditor in his report says, "there has been but little difficulty in ascertaining the amounts due claimants, as in most cases the amounts were agreed to, or the evidence was so clear as not to admit of much doubt. *The only difficulty experienced by the auditor was in ascertaining and fixing the lien of respective claimants.* This he has done to the best of his ability in view of all the circumstances and *conflicting rights.*" In the light of this statement of the auditor, it is submitted that the consent order of reference commits the parties much more thoroughly to the position that the division was to be according to legal priorities than that it was to be *pro rata* among all the creditors. The bill was not taken *pro confesso,* and if it had been I apprehend neither complainants, nor their counsel, in their absence, would have sworn that the levying creditors had agreed to be bound by an assignment which they had refused to sign. Those credi-

tors were present in Court, through their counsel, asserting their right to priority of payment; that because they failed to embody their defense (which consisted in a single legal proposition) in a written answer, they should therefore be held to have assented to the assignment, which the bill alleges they refused to do, and this in the absence of any order, even, taking the allegations of the bill as confessed, strikes my mind as a somewhat startling legal proposition. The truth evidently is, that no point was made on the want of an answer, and the counsel proceeded to argue the legal question without regard to the state of the pleadings. A loose practice, perhaps, but not quite so pregnant with such momentous consequences as is claimed by, what appears to me to be a too close adherence to the *forms* of proceedings. Nor can I see that a failure to move a dissolution of the injunction committed the levying creditors to the assignment. They were quite willing that the scattered property should be collected by a receiver and sold to the best advantage, instead of having to levy on it along a long line of railway, wherever found, and to sell it at great sacrifice, thus exhausting the assets without paying the debts. But they were all the time insisting on the priority of their liens. To use a favorite expression of the learned lawyer whose views upon this subject I am combatting, to consent "that the injunction prayed for should be granted, the property included in the deed of assignment sold, the funds arising therefrom be distributed according to the evidence and the law," is one thing; to assent to be bound by the assignment and waive priorities, is another, and quite a different thing. In short, the whole case is embraced in the following nutshell, and was so understood by counsel: Did Schaub & Lawton have the power to bind, and did they bind, etc., their creditors, against their consent, by the assignment? And this depended on whether the laborers' liens took effect from the time of performance of the labor, or only from the time of foreclosure; and upon the language of the assignment. If the lien took effect from performance, the assignment could not divest it. If only from foreclosure, and the language of

the deed made an unconditional transfer, it did bind all the laborers who had not foreclosed before the assignment.   A decision that the lien took effect from performance settled the case, otherwise, the interpretation of the instrument controlled.

V. It may be well just here to notice one of the arguments of plaintiff in error.   It is urged, that as the third assignment of error alleges that the Judge held the agreement to be the law of the case, and no exception was taken to the ruling, the defendants in error are bound by it, as the Judge certifies to the truth of the bill of exceptions, that, therefore, the only point just here for this Court, is whether the Court below interpreted the language of the assignment correctly.   It will be recollected, that the Judge sat as both Judge and jury. Let us suppose a jury, and analyze his action thus:   The complainants offer the assignment in evidence.   It is admitted over the objection of the creditors who have not signed, and others who interpret it as effective only if all creditors sign it. The Judge charges the jury, that the assignment means that the division under it is to be made according to the legal priorities of the debts, and the jury render a verdict in accordance with the charge.   The defendants, under the interpretation of the contract by the Court, do not except to his ruling, admitting it in evidence.   Complainants except, and allege the Court erred in his construction of the instrument.   This Court is of opinion, that he did err in his interpretation of the assignment, but are also of opinion, that the instrument, not having been signed by all the creditors, and Schaub & Lawton not having any power to divest laborers' liens without the consent of the laborers, ought never to have gone to the jury, and that their verdict is legally right.   Would a new trial be granted?   I think not, because a new trial could be of no service to complainants, under the interpretation now placed upon the assignment by this Court.   It would necessarily be rejected as evidence on the second trial, and with it complainants' whole case falls.   A new trial will not be granted, of course, for misdirection of the Judge, if it appears that justice has been done: 33 *Georgia,* 173, 207; 2 Tidd's Pr., 908, (*n.*,)

Camp & Kemp *et al.* *vs.* Mayer *et al.*

and authors cited. Nor where a different verdict would not be allowed to stand: 30 *Georgia*, 278, 476, 958 ; 16 *Georgia*, 368.

VI. I will next consider the third alleged error of law on the part of the auditor, as by that the second must be controlled. The laborer's lien attaches from the time the work is done, and is not postponed until foreclosure : 43 *Georgia*, 9. So, at least, says one member of the Court in the case cited ; and, after carefully reading the Constitution, I am compelled to agree with him. That provides that mechanics and laborers shall have liens upon the property of their employers for labor performed or material furnished, and the Legislature shall provide for the summary enforcement of the same. But suppose the Legislature fail to provide for the *summary* enforcement of the lien, does it follow that it cannot be enforced ?  Could not the mechanic or laborer go into a Court of law or equity, as the case might require, and ask that it be enforced ?  If this is so, and the lien does not exist until foreclosure, wherein does it differ from the lien of an ordinary judgment in the case supposed ?  The mere neglect of the Legislature to provide a summary remedy, would deprive this class of persons of a constitutional right. The policy of this law may be very questionable, as argued. This Court is not the judge of that. Nor does it follow, because these liens date from the time of the performance of the work, that, therefore, they override the claims of *bona fide* purchasers without notice. But that question is not now before us. If, then, the lien dates from the time of performance of the work, it makes little difference whether the Ordinary is a proper officer before whom to foreclose the lien or not, so far as this case is concerned. It seemed to be conceded on the argument, that if the laborers' liens attached from the performance of the labor, that they ante-dated the judgment of the United States Court. There is, however, another completely satisfactory reason why they should take precedence of that judgment,

VII. To-wit : partnership assets must first satisfy partnership debts before individual debts, or debts of a former part-

nership, of which one of the present firm was a member, can be paid. The converse of this proposition is also true at common law: 3 Kent's Com., 64–65, (8 Ed.) The converse, but not the rule itself, has been modified in Georgia: Code, 1908.

VIII. If the fourth alleged error is true, I am inclined to think it would be a good ground for reversing the judgment of the Court below. But it is directly contradicted by the report of the auditor. He says he examined and weighed all the evidence submitted by the parties, and that it consisted, among other things, of the books of the defendants. No exception is filed to his report upon the ground that his statement is untrue in this respect, unless the one now under review be considered as inferentially charging it to be untrue, and if so, it is to that extent an exception to a fact reputed, and should have been supported by proof.

IX. Lastly, I know of no rule under our practice, requiring the auditor to append to his report the evidence upon which it is based. The report is, *prima facie*, true, and the *onus* is upon the party attacking it to produce the evidence to overthrow the presumption in its favor. Hence this ground must also be overruled, and the judgment of the Court below affirmed.

McCAY, Judge, concurred, but furnished no opinion.

WARNER, Chief Justice, dissenting.

This was a bill filed by the complainants against the defendants praying an injunction, and for the appointment of a receiver to take charge of the property and effects, specified in a deed of assignment, executed on the 31st day of October, 1871, by Schaub & Lawton to Samuel Mayer, in trust for the payment of all their creditors. The allegations in the bill are, that the creditors were numerous, the property scattered along the line of a railroad, in different counties, and that some of the creditors were proceeding to enforce their respective liens upon the property, whereby, great damage would result to the property conveyed, as well as loss to the credi-

tors of Schaub & Lawton, who are insolvent. The prayer of the bill is, that the creditors may be restrained by injunction from enforcing a sale of the property, under their respective liens, and that a receiver be appointed, to collect the property together, specified in the deed of assignment, until the further order of the Court. This bill was not filed for the purpose of setting aside the deed of assignment, but to enforce the execution of it for the benefit of *all the creditors* of Schaub & Lawton, as specified in the deed. The Judge granted a temporary injunction on the 8th November, 1871. On the 18th November, 1871, the presiding Judge granted the injunction as prayed for in the bill, and in the order it is recited, that upon a meeting of the parties in this case, and upon their agreement, it is ordered that the injunction prayed for in said bill be, and is hereby granted. It is further ordered, that Samuel Mayer be appointed receiver, to take charge of all the property mentioned and included in said deed of assignment, and that he advertise said property, and sell the same to the highest bidder, at Albany, on the 2d day of December next, for cash. It was further ordered, that William E. Smith be appointed auditor, to hear proof of the amount, and the priority of each claim on said funds, and that his report shall include the amount of the funds which the receiver's sale shall show subject to distribution, and the amount that may be due each creditor according to *the evidence and the law.*

The property of Schaub & Lawton, specified in the deed of assignment, was sold by the receiver, under the order of the Court. The auditor made his report of the amount of the sale of the property, and of the amount and priority of each claim on the fund, giving to the claimants who were mechanics and laborers a priority of lien on the fund, and reported in favor of the payment of their claims in preference to the other creditors of Schaub & Lawton. Exceptions were filed to the auditor's report. When the case came before the Court for trial, it was argreed by the counsel representing the parties before it, that the presiding Judge should act both as Judge and jury—reserving all right of exceptions they might have

as if the case had been submitted to a jury, and not in any manner to be bound by the arbitration laws. There were several exceptions filed to the auditor's report, one of which was, "because said fund coming into Court under a deed of assignment, all creditors claim *pro rata* under that deed, and after paying Court costs, auditor's fees, and attorney's fees, there are no preference or priorities in favor of any creditors, but they must all come in *pro rata,* and so much of said report as gives any preference is illegal." The Court overruled this exception to the auditor's report, as well as all the others, holding that the words, "equally divide the proceeds between said creditors," in said deed of assignment, meant equally divide *according to the priorities created by law.* The Court rendered a decree confirming the auditor's report, and this is assigned as error. The main question in this case, is whether the decree rendered upon the bill filed to enforce the execution of the trust in the deed of assignment, as set forth in the bill, was made in accordance with the terms and provisions of that deed: in other words, whether the law as applicable to the evidence furnished by that deed, as a part of the record of the case, authorized the decree which was rendered by the Chancellor. The deed of assignment recites, that Schaub & Lawton being unable to pay their debts, and to prevent a waste of their valuable property by useless litigation, conveyed the same to Mayer, to have and to hold said property upon trust, to advertise thirty days for all claims against Schaub & Lawton, and upon ten day's notice, to sell said property at public or private sale, as said Mayer may determine to be best, and upon such sale, to *equally divide the proceeds thereof between the creditors of Schaub & Lawton.* Mayer, as one of the complainants in the bill, prayed the aid of the Court to enable him to carry into effect this deed of assignment according to the true intent and meaning thereof.

The property specified in the deed of assignment was the property of Schaub & Lawton, and they had the legal right to convey it to Mayer in trust for the payment of all their creditors in the manner therein stipulated, provided their cred-

itors were willing to accept it upon the terms specified in the deed; and when the Court ordered the sale of the property in the hands of Mayer, the trustee, under the deed of assignment, as the property of Schaub & Lawton, the proceeds of the sale thereof should have been *equally* divided between their creditors claiming under that deed, and not equally divided between them according to the *priorities created by law*. Such were not the terms of the deed conveying the property, and if the creditors of Schaub & Lawton claim the proceeds of the sale of the property under that deed of assignment, as they undoubtedly do, they must claim it in accordance with the terms and provisions of that deed, and not otherwise. When this bill was filed by the complainants to enforce the execution of the trust created by the deed of assignment, and it was served on the creditors of Schaub & Lawton who were attempting to enforce their laborers' and mechanics' liens, enjoining them from prosecuting the same, if they intended to attack and repudiate the deed of assignment set forth in the bill, they should have made their defense thereto, have filed their answers and moved the Court to dissolve the injunction, and have insisted on *the priority* of their respective liens. They did not do so, but, on the contrary, *consented* that the injunction prayed for should be granted, the property included in the deed of assignment sold, and the funds arising therefrom be distributed according to the evidence and the law. That the bill was filed to enforce the execution of the trust created by the deed of assignment for the benefit of Schaub & Lawton's creditors as therein specified, there can be no doubt, and all the proceedings in the case were had under that bill, and the exhibits attached thereto; that was *the evidence* before the Chancellor as to the manner in which the fund was to be distributed between their creditors.

If a judgment creditor of Schaub & Lawton had filed a bill against Mayer, the trustee, to enforce the trust for the benefit of their creditors generally, it would have been a *waiver* of his judgment lien upon the fund: *Jones vs Dougherty*, 10 *Georgia Reports*, 274. So, if their creditors who

had prior liens upon their property as laborers or mechanics consented that the property conveyed to the trustee by the deed of assignment should be sold, and that they would claim the proceeds of the sale thereof, it was a *waiver* of the priority of their liens, and they cannot assert them in the distribution of the fund. There is *no consent* in the record that the fund should be distributed according to the *priorities of the respective creditors' liens*, and Schaub & Lawton most certainly have not consented that the proceeds of the sale of their property should be distributed in that manner between their creditors, when they had expressly provided in their deed of assignment that it should be *equally divided* between them. By consenting to come in and claim the proceeds of the sale of the property as the creditors of Schaub & Lawton under the deed of assignment, they adopt and affirm its provisions. There is no attempt to set aside the deed of assignment by any of the creditors of Schaub & Lawton, and *they* are not parties before the Court; but, on the contrary, the sole object of the bill under which the entire proceedings were had, was to enforce the execution of the trust as specified in the deed created by them for the benefit of all their creditors. But it is insisted that inasmuch as the order of the Judge granting the injunction and appointing the receiver, recites that it was done by the consent of the parties, that that alters and changes the *status* of the claims of the creditors as specified in the deed of assignment, in regard to the manner in which the same should be paid out of the fund arising from the sale of the property conveyed by that deed. The order appointing the auditor directed him to hear proof of the amount, and priority of each claim on said fund, that is to say, the fund arising from the sale of the property included in the deed of assignment, which the Judge, in the same order, directed to be sold. To ascertain the amount and priority of each creditor's claim is one thing, to order the *payment* of such claims out of the fund arising from the sale of the property conveyed by the deed of assignment, according to *the legal priority of such claims*, is another and quite a different thing, and much the

most important question, in view of the express words of the deed conveying the property.

It will be noticed that the auditor is not only required by the order to hear proof of the amount and priority of each claim, but he is also required by the order to report the amount of the funds which the receiver's sale shall show subject to distribution, and the amount that may be due each creditor, according to *the evidence and the law*. Although some of the creditors of Schaub & Lawton may have had prior liens upon their property independent of the deed of assignment conveying their property in trust for the benefit of all their creditors, still, when they claim under that deed of assignment, the law is, that they must take in accordance with its terms; they cannot claim under the deed of assignment and *repudiate* any essential part of it. The order of the Judge directing the auditor to hear proof of the amount and priority of each claim, did not *necessarily* require him to report in favor of *the payment* of any particular class of claims in preference to others, out of the fund in the hands of the receiver; but he was required to report the amount that may be due each creditor according to the evidence and the law, and if the evidence showed that he was a creditor of Schaub & Lawton, then, under the law as applicable to this deed of assignment, he was to be paid in accordance with its terms and provisions, and not otherwise. It would be an unreasonable and forced construction to hold that the words in the deed of assignment, to *equally* divide the proceeds of the sale of the property conveyed thereby between said creditors of Schaub & Lawton, meant to be equally divided *according to the priorities created by law*.

The exceptions to the auditor's report, and the assignment of errors thereon to the rulings of the Court, are all specially and distinctly set forth in the bill of exceptions presented to the Judge for his signature, and he has certified that the same are true—one of which is, "that the Court, after holding that the deed of assignment from Schaub & Lawton to Samuel Mayer was the law of the case as to priority, erred in constru-

ing the words, equally divide the proceeds between said creditors in said deed of assignment, to mean, equally divide according to the *priorities created by law*, and then holding that Vogt & Company had no lien on the fund." Now, if the Judge did not distribute the fund arising from the sale of Schaub & Lawton's property under the deed of assignment, and according to his construction of the words of that deed, then his certificate that he did do so is not true; but I take the certificate of the presiding Judge to be true, and that he decided, as he has certified that he did, in construing the words contained in the deed of assignment, which construction was error, in my judgment. I am, therefore, of the opinion, that the judgment of the Court below should be reversed.