Jones *et al. vs.* Smith, governor.

Justices Jackson and Crawford being disqualified on account of relationship to parties interested, Judge Pottle, of the Northern Circuit, and Judge Lawson, of the Ocmulgee, were designated by the governor to preside in their places.

1. Where J. and his securities entered into a bond with the governor, conditioned for the faithful performance of the duties of his office as treasurer of the state, during the continuance of his office—that term being four years ; and parol evidence was offered at the trial, going to show that the bond was accepted by the governor as a temporary bond, to be void when a new bond, with new securities, was executed, and when it appeared that the bond was absolute and unconditional on its face :

*Held,* that the court did right in repelling that parol testimony, there being no pretense that that testimony showed mistake or fraud on the part of the obligee.

2. An executive warrant, issued by the governor to the treasurer as a voucher for redeemed bonds of the state, is open to inquiry by the courts, as to the good faith of the treasurer in procuring such warrant, when it is alleged in the pleadings that the same was procured by the fraud of the treasurer. Especially is this so when the *state* sets up fraud upon its agent, the governor. by the treasurer.

3. An order of the presiding judge in appointing an auditor to investigate accounts of the treasurer in this case, was a proper order.

4. Where an auditor is appointed to investigate accounts, he does not exceed his powers in passing upon the legality of vouchers.

5. Where exceptions are filed to an auditor's report, it is the duty of the presiding judge to submit the exceptions of fact to the jury *seriatim,* according to section 4203 of the Revised Code ; but if in the opinion of the judge, several of these exceptions contain the same subject matter, he may consolidate them into one exception, in order to simplify the issues to the jury. The condensation in this case was not error, especially as it seems that no objection was made at the time ; and the jury, in one of their special verdicts, did consider them separately.

6. When a case has been submitted to a jury, and after argument to them has commenced, it is not error for the presiding judge to allow counsel to re open the case for the introduction of testimony, when the attorney states in his place, that he thought that that testimony was already before the jury, and if not, it was left out by inadvertence.

7. Where a jury, by the consent of parties, is allowed to disperse after making their verdict, and returns into court, it was not error in the court to allow an alteration made, which alteration but expressed the legal meaning of the finding. Especially was it not error in the presiding judge in this case, where it appears that the alteration was beneficial to the plaintiffs in error.

8. There were no errors of the court in its rulings on the auditor's report, and no material errors of which the defendants can complain, in the charge to the jury, as excepted to.

9. Where a case has been fairly submitted to a jury on the facts, and though the evidence was conflicting, this court will not disturb the verdict when the presiding judge was satisfied therewith. In this case the parties had the benefit of having the facts passed upon both by an auditor and the jury. It would require a very strong case to disturb that finding. The verdict of the jury in this case might have been either way, but it is not the province of this court to decide on which side was the preponderance.

Bond. Contracts. Evidence. Governor. Constitutional law. Auditor. Practice in the Superior Court. New trial. Before Judge HILLYER. Fulton Superior Court. October Term, 1879.

The facts material to the questions passed upon by the court are stated in the opinion.

P. L. MYNATT; B. H. HILL; JOHN L. HOPKINS; HOKE SMITH; J. L. BROWN, for plaintiffs in error, cited on effect of executive warrants obtained by Jones, 56 *Ga.*, 674; 59 *Ib.*, 364; 1 Miss., 442; 7 *Ga.*, 673; 8 *Ib.*, 361; 17 *Ib.*, 29; 20 *Ib.*, 795; 12 Pet., 524; 14 *Ib.*, 497; 17 How., 225, 284; 6 *Ib.*, 92. If executive warrant may be set aside for fraud, facts must be alleged, 44 *Ga.*, 38; 58 *Ib.*, 144. On alteration of verdict, Code, §3492; 55 *Ga.*, 667.

R. N. ELY, attorney-general; McCAY & TRIPPE, for defendant, cited on effect of executive warrants 56 *Ga.*, 674,

State not bound by laches of agents, 20 *Ib.*, 470; 2 *Ib.*, 150 ; 49 Mo., 243 ; 9 Wheat., 720 ; 11 *Ib.*, 184 ; Brandt on Suretyship and G., §474 ; 2 Hill, 175 ; 8 Paige, 541. On power of auditor and effect of report, 59 *Ga.*, 50 ; 56 *Ib.*, 264 ; 57 *Ib.*, 142 ; *Cook vs. Houston County*, February term, 1879. Parol evidence inadmissible to show that bond was not the regular official bond which it purported to be, 8 *Ga.*, 534 ; 13 *Ib.*, 192 ; 43 *Ib.*, 423 ; 57 *Ib.*, 319 ; 55 *Ib.*, 403 ; 53 *Ib.*, 18, 218, 575 ; 54 *Ib.*, 290, 586 ; 52 *Ib.*, 131, 448 ; 4 *Ib.*, 106 ; 30 *Ib.*, 271 ; 44 *Ib.*, 662 ; 59 *Ib.*, 851, 562 ; 52 *Ib.*, 149 ; 54 *Ib.*, 289 ; 56 *Ib.*, 31 ; 9 *Ib.*, 585 ; 1 *Ib.*, 583 ; 5 Wend., 187 ; 1 John. Ch., 425 ; 8 Cow., 543 ; 11 Iredell, 145 ; 1 *Ib.*, 303 ; 27 G at., 614 ; 5 Ala., 65 ; 50 Maine, 36, 347 ; 1 Pet., 46 ; 3 How., 578 ; 11 *Ib.*, 162 ; 4 Wall., 185 ; 9 *Ib.*, 83.

Pottle, Judge.

This case was a suit on a bond of John Jones, made and executed on the 13th day of January, 1873, with John T. Grant and C. A. Nutting as securities, payable to James M. Smith, governor, conditioned for the faithful discharge of the duties of his office as treasurer of the state, to which office, as the bond recites, he had been elected on the 11th day of January, 1873, for four years from and after said day of election.

The declaration alleged that the treasurer had broken his obligation in many particulars. As some of these allegations have been disposed of upon the trial below, and are not here for review, it is only necessary to refer to those which are in the record for our examination.

First, it is charged that when Jones took possession of the treasury, on the 13th day of January, 1873, there were therein certain bonds of said state which had matured prior to that date, and had been redeemed, taken up and deposited in said treasury for safe keeping, as required by law— then followed a description of said bonds—which said Jones

subsequently falsely and fraudulantly pretended that he had paid off, with the interest on them, namely : twenty-one thousand and five hundred dollars principal, and one thousand and eighty dollars interest thereon, and that he presented them to the governor as vouchers for said payment, and had them covered by executive warrant, dated——day of——1874, and took credit for them in his accounts with' said state.

Second, that John Jones falsely and fraudulently procured an executive warrant for another series of bonds, amounting to the sum of twenty-seven thousand five hundred dollars, which had been redeemed, and deposited in the treasury for safe keeping, and that he obtained a credit also for that amount fraudulently in his accounts with the treasury.

Third, that on the 30th day of November, 1874, he falsely and fraudulently represented to the governor, that he had paid off, with the money of the state, forty-three thousand two hundred and sixty dollars of gold coupons and fourteen hundred dollars of currency coupons, matured on the outstanding bonds of the state, and by that fraudulent means, had procured from the governor an executive warrant for said sums, and afterwards got credit for them.

These three items constitute the only issues here, as to the liability of Jones.

When the case was called for trial in the superior court, the securities, John T. Grant and C. A. Nutting, presented pleas with three counts. Those pleas are, substantially, that Jones was elected treasurer on the 11th day of January, 1873—that the governor was anxious that he should take charge of the treasury at once—that Jones was not prepared to give his official bond at once, because of the absence of his sureties. To meet that emergency, it was agreed that Jones should execute a temporary bond with sureties, to be held by the governor until he should make and deliver a permanent official bond, and then to become void and of no force—that, in pursuance of that agreement between the

governor and Jones, the bond sued on was made. It was made by Jones and the securities to be held by the governor until Jones should afterwards make and deliver a permanent bond, then to be void—that the bond sued on was delivered to the governor, in pursuance of that agreement, and accepted by him—that, afterwards, in pursuance of said agreement, and in satisfaction of the old bond, and in lieu thereof, and in obedience to law, on the 25th of January, 1873, Jones made his permanent official bond, signed by A. R. Jones, John A. Jones, Seaborn Jones, Batt Jones, J. M. Russell, J. D. Waddell and H. L. Benning, as sureties, which bond was tendered to and accepted by the governor on the 25th of November, 1873—that said last bond was placed of file in the executive office, and that suit is now pending on said bond against the securities. The pleas also insist that no breach of said bond sued on occurred, and if any official misconduct on the part of Jones took place, it was after the making of the second bond.

The presiding judge, by an order which appears in the record, referred the matters of account of said Jones to an auditor. The following is a copy of that order :

" Upon consideration it is ordered that James M. Pace, of the county of Newton, be and he is hereby appointed as auditor to investigate the accounts between the state and said John Jones, principal, during the time covered by said bond; that said auditor may *subpœna* witnesses, administer oaths, and hear testimony upon any disputed facts, always giving notice of his sittings to the defendants in said case or their solicitors; that all interrogatories and depositions in said case may be returned to the clerk and opened and handed to the auditor; that he report the result of his auditing of said accounts to this court by or during its next term, and either party to said cause shall have fifteen days after notice of filing said report to except thereto. July 1st, 1876."

The auditor made his report, to which many exceptions were filed. The exceptions of law were disposed of by the court, and those of fact submitted to the jury under the charge of the court. The jury found for the plaintiff the three items of liability charged in the declaration, aggregating $92,193.49.

A motion for a new trial was made on the grounds stated in the record, which motion the presiding judge overruled, and the principal, Jones, and his securities, Grant and Nutting, each excepted.

1. The assignments of error which relate to the rulings of the court as affecting the rights of the securities, Grant and Nutting, will be considered first in order. The record shows that all of the pleas of the securities were demurred to by their counsel, and that the demurrer was sustained as to one of them, but as it does not appear that this ruling was excepted to, this court will only consider that question made in the pleas, as it was raised on the introduction of testimony in support of the pleas.

In support of their pleas the securities offered themselves as witnesses, proposing to prove that Jones, the treasurer, applied to them to go on a temporary bond to be held by the governor for the performance of his duties until a permanent bond could be executed by John Jones, his relatives and friends, and that they went with that understanding to the executive office and signed and delivered this bond, and when they so signed and delivered it they so stated to the governor that it was for the temporary purpose, and was to become void when the permanent bond should be made, delivered and approved, and it was so accepted by the governor.

This testimony, when offered, was objected to by the plaintiff and the court sustained the objection.

The question is, was parol evidence admissible to show such an agreement made cotemporaneously with the bond as to the liability of the securities ?

Parol evidence is inadmissible to add to, take from, or vary a written contract. Code, §2757.

There is no ambiguity in the lanuage of the bond. It was absolute and unconditional on its face. It conformed precisely to the statute. It obligated the principal to discharge faithfully his duties during the term of his office, and that term specified in the bond was four

years.   The proof offered went to show that the duties were to be performed only until a new bond could be made with new sureties, and when that was done, this bond was to be void.   It did not propose to show fraud in any one in the demanding or acceptance of the bond.   It was argued, and numerous cases were cited, to show that parol evidence was admissible to show the non-delivery of a contract; and that when a writing purporting to be signed, sealed, and delivered, was only delivered upon a condition, a condition, for example, that others were to become co-sureties, parol evidence is admissible to show the condition.   The character of such proof goes to the extent, and no farther, of showing that there was not a complete execution of the instrument.   It would have been admissible in this case to have shown that the bond was not delivered; but the proof offered goes beyond this; it admits the delivery of the bond, and seeks to engraft upon it a stipulation wholly inconsistent with it.   The obligors say in the bond that it is to last for four years; that during *that time* Jones is to faithfully perform the duties of his office.   They now propose to show by parol that that was not the undertaking; that the undertaking was that when a new bond was made, this should be void; that their liability was for a short time, and not for four years.   There was no pretense that the parol stipulation was left out by mistake, but the only reliance was that the securities trusted to the parol promise as they did in the case of *Mansfield vs. Barber*, 59 *Ga.*, 351.   In that case the security to a promissory note offered to prove a parol cotemperaneous agreement, that he was to remain surety for a short time.   There being no allegation that it was left out of the writing by mistake on his part, or by the fraud of the other party, or that the parties intended to have inscribed the omitted matter, the evidence was rejected.   In this case the parties did what they intended to do; they made the bond, and relied upon the parol agreement that its terms and duration should be different from the clearly expressed stipulations in the writing.

We therefore agree that there was no error in excluding the testimony. The courts have been strict in enforcing so wise a rule of law in its relation to all writings. We are not disposed to relax it, especially in a case like this, where the highest public interests demand that obligations to the state, when reduced to writing, should not be open to verbal explanations.

2. The next question which we are called on to consider is that raised by exceptions to the auditor's report. Those exceptions being that the auditor could not find against Jones $21.500, and other amounts of like character, it appearing by said report that those bonds are covered by executive warrants, and said warrants being conclusive as to the validity of all the vouchers upon which it is based, it is not in the power of the auditor, or of the courts, to overhaul the vouchers and determine the propriety of issuing said warrants, or to charge back to the treasurer any amount received by him upon said warrants.

This exception brings up the question of the right of one department of the government to revise the discretionary action of the other, to state it in the language of the counsel of the plaintiff in error.

We are at a loss to see how this action of the auditor, and the ruling of the court upon it, impinges upon the fundamental law, that the three departments of the government are to be kept distinct in their jurisdictions and functions. The gravamen of this whole case is, that one of the servants of the people has money in his possession which rightly belongs to them—that a large amount of its redeemed bonds and coupons had been put into the treasury for safe keeping after having been paid with their money—that *that* servant, in fraud of their rights, took these bonds and coupons to the governor, and fraudulently represented to him that he had paid them with his money.

If the facts alleged, and as found by the auditor, are true, the treasurer has in his possession vouchers which are false and fraudulent. The state itself, who is the real party, is

seeking to recover back these sums of money obtained upon false vouchers. Why cannot that be done? It is true that the issuance of the warrants is an executive act, but the governor himself, as the agent of the people, is seeking to reclaim lost money obtained by a fraud upon *him*, upon what principle of law is the state concluded from inquiring into the *bona fides* of this transaction? The state cannot do a more solemn act than to issue a grant, or the governor to pardon, and yet if a grant has been obtained by fraud it may be inquired into and declared void by the courts. A pardon, which annuls the judgments and sentences of courts, may itself be set aside for fraud. A commission to hold an office is a solemn act of the government, but the courts may inquire into the validity of elections and declare the commission void. So that we agree that the auditor and the court had a right to inquire into any alleged frauds going to show that the warrants obtained from the governor by the treasurer were obtained by fraudulent representations.

3, 4. When the order appointing an auditor was passed, it was a rightful exercise of power by the chancellor. The accounts were complicated, and it was a matter which could only be investigated by skilled persons.

5. It is complained that the presiding judge did not submit to the jury *seriatim* the exceptions of fact made and set forth in the record. It is undoubtedly the duty of the judge to do so, as is required by section 4203 of the Revised Code; but, after carefully inspecting the record and comparing the exceptions, we are of the opinion that the condensation of several of them into one was a simplification of the issues to the jury. When the order was passed condensing them it does not appear that any objections were made to it, and while we do not decide that the failure to do so at the time concludes them from urging the objection here, yet as no objection was made, and it appears to have been a proper exercise of discretion, and one beneficial to the defendants, we are unwilling to sustain this ground of error.

6. After the evidence had been closed, and one of the counsel for the plaintiff was addressing the jury, he proposed to put in evidence the contents of a box of coupons, which he stated in his place had been omitted by inadvertance, and that he supposed had been offered and admitted. The court did right to allow the case to be ro-opened; such a practice has long existed in the courts, and justice required it to be done upon the showing made in this case.

7. After the jury had dispersed by the consent of the parties and returned into court, an alteration of the verdict was suggested and allowed to be made by the court. We are clear that this alteration but expressed more clearly the meaning of the jury, and one which was of benefit to the defendants.

8. We find no errors in the rulings of the court on the exceptions to the auditor's report, and no material errors in the charge to the jury.

9. The last ground in the motion for new trial is that the verdict of the jury was contrary to the evidence. As before said, the verdict was only for the plaintiff the amount of the redeemed bonds of twenty-one thousand five hundred dollars—then of twenty-seven thousand five hundred dollars, and the gold coupons, amounting to about forty-four thousand dollars. It was conceded in the argument that the item of twenty-seven thousand five hundred dollars was not a proper charge by the treasurer against the state; but he claims that the jury did not make proper allowances to him in diminution of that item of indebtedness.

Upon the merits of the case we express no opinion. The jury had before them the testimony of Alton Angier and his father, and also the testimony of the officers of the Fourth National Bank of New York as to the shipment, payment and deposit of those bonds and coupons in the state treasury, with the testimony of Jones and others. They chose to believe that the bonds had been paid and returned to the state treasury, and that *these* bonds had been

charged up wrongfully by the treasurer against the state. In this they are supported by the auditor. With the correctness of the verdict we have nothing to do. It might be supported either way. Where a case has been fairly submitted to a jury, it will require a strong case to authorize this court to disturb the verdict upon the facts alone.

Judgment affirmed.