ARTHUR *vs.* THE COMMISSIONERS OF GORDON COUNTY.

1. The power to issue execution against a defaulting county treasurer was formerly vested in the inferior court, then in the ordinary, and lastly in the county commissioners, in counties where they exist.

(*a.*) Such an execution is issued summarily, and the defendant then has a right to test the questions involved by a trial by jury. A defendant who has had a full and complete trial after the issuance of execution, has no cause to complain that he did not have it before.

(*b.*) An execution issued by county commissioners and signed by their clerk on their order is good.

2. Exceptions to matters of fact in an auditor's report must be defi-

Arthur *vs.* The Commissioners of Gordon·County.

nite and specific.   Mere general allegations of error are not sufficient.

3. Where after a case had been pending in court for several years on exceptions of fact to an auditor's report, on the trial it was proposed to add new exceptions, without showing any cause for the delay in offering them, there was no error in rejecting them.

4. After an auditor's report has been made, ample opportunity for legal exceptions to it given, and no exceptions of law made, but only exceptions of fact, or exceptions of law made and overruled, the report is *prima facie* evidence, and the burden of overcoming it is on the exceptor.

5. The burden being upon him who excepts to an auditor's report, he is entitled to open and conclude unless the other party introduces no testimony, in which case the right of conclusion shifts to him.   To cross-examine a witness of the objector, and to continue the cross-examination after a temporary suspension of it by the court, is not the introduction of testimony by the party so cross-examining in such a sense as to affect his right to the conclusion.

6. What a county treasurer said on turning over his books for examination to certain persons appointed by the county commissioners for that purpose, is not admissible in his own favor on the issue of whether or not there was a default by him.

7. The rate of interest to be charged upon a given principal is a question of law.   Being brought into question by exception to an auditor's report, it is for the decision of the court.

8. The verdict is supported by the evidence.

9. The confused state of many of the records sent to this court, the illegible and unintelligible manner in which they are made up, and the latitude allowed to counsel in having them sent back in the midst of a crowded docket for alteration or correction, call for a remedy.   It would be advantageous for the legislature either to permit this court to make and enforce proper rules on this subject, or to remedy the evil by direct legislation.

County Matters.   Executions.   Constitutional Law.   Auditors.   Practice in Superior Court.   Practice in Supreme Court.   Records.   Before Judge UNDERWOOD.   Gordon Superior Court.   February Term, 1881.

Reported in the decision.

DABNEY & FOUCHE; W. J. CANTRELL & SON; JOS. N. MCCONNELL, for plaintiff in error.

W. K. MOORE: E. J. KIKER, for defendants.

JACKSON, Chief Justice.

This record consists of a huge mass of disconnected and ill-assorted papers, with pages omitted as appears from the paging. This mass, unwieldy in itself, is sub-divided into ten or more parts, each parcel to itself as a separate transcript, and heterogeneous parcels of matter, wholly distinct from each other, so far as the record discloses, are grouped in the same parcel. It is all in writing, none of it printed, and the writing, a good deal of it, hard to decipher. Reference to exceptions and amendments is sometimes made by numbers, and sometimes by numbers with letters prefixed or annexed to them ; and there is no discoverable means from the bill of exceptions or any of the ten parts of the transcript, of ascertaining to what these lettered figures refer. Nor does the abstract of the counsel for plaintiff in error, or the brief, throw such light upon this confusion as to bring order out of its chaos. It is very difficult, therefore, to review the case intelligently, or to reach a conclusion upon it entirely satisfactory. But as it is the duty of the plaintiff in error to make error appear, it remains for this court to rule such questions of law as are made so that we can pass upon them ; and where none such are made so as to show error in the rulings below, to take it for granted that none exist.

The county commissioners of Gordon county issued executions against Arthur and his sureties as a defaulter in handling the county funds as treasurer during two terms of office. To these executions affidavits of illegality were filed by him ; an account was taken by an auditor, who found large sums due by the treasurer for both terms of office ; to his report exceptions were filed by Arthur, and on these exceptions a verdict was rendered sustaining the report in the main ; a new trial was denied by Judge Underwood, Judge McCutchen having presided on the trial

Arthur *vs.* The Commissioners of Gordon County.

before the jury; and on the judgment of Judge Under-wood refusing the new trial, and on his order and decision directing the executions to proceed for certain sums of principal, with interest at seven per centum, error is assigned here.

1. A motion was made to quash the executions on the trial, and this is one ground of the motion for new trial. It is based on the ground that the county commissioners had no power to order these *fi. fas* to be issued. They take the place of the ordinary, and he stands in the shoes of the old inferior court, and we think it clear that the power to issue the executions devolved upon these officers by law. Code, §§563, 911; Cobb's Digest, p. 212. We see nothing in the constitutional point about trial by jury before the executions issue. He has had that trial after they were issued, just as fully as it could have been had before, and the right is in no substantial sense impaired. Ever since 1825 it has devolved upon the justices of the inferior court, and then on the ordinary, and more recently on the county commissioners, to issue these executions summarily, and then the remedy, as in this case, may be had by trial by jury before the courts. Code, §5127; 5 *Ga.*, 185. Under this power provided in the constitution of 1868, codified as last cited, this board was created for Gordon county, and this power transmitted to them. The executions are not issued by the clerk but by the commissioners, and signed by the clerk on their order. So far as we can see, they comply substantially with law. 9 *Ga.*, 185; 11 *Ib.*, 207; Cons. 1868, Art. 11., sec. 7; Code, §§337, 506; Acts 1874, p. 344.

2. There was no error in striking the exceptions complained of as too general. *47 Ga.*, 434. In matters of account, running through a series of years, the exceptions to the auditor's report thereon should not deal in general terms, but in specifications of issuable points. In all pleadings, issues should be specific, in exceptions to the report of an auditor, especially so; otherwise the work of

the accountant appointed by the court will amount to no
practical effect, but the entire case had as well be tried *de
novo* by the jury.   It is only the exceptions as to matters
of fact which are tried by the jury, and they must be
specific and distinctly issuable.   But the case cited *supra*
from the 47th *Ga.*, rules the point, and it is useless to
argue it.   This covers the ruling of the court in striking
the 2d, 5th, 9th, 10th, 11th, 12th, 14th, 15th, and 16th
exceptions, so far as we are able to apply the rule of law
to a record so confused as this is, for there is nowhere in
it a complete statement of the exceptions originally made
by defendant, but those allowed to stand seem embodied
together, and those stricken are in another place, and
they differ in the transcript as a recital and in the order
of the judge striking them.   For instance, the judge ac-
cording to his judgment, struck the fifth, which does not
appear elsewhere as stricken, and which cannot be found
in the record at all.   It is, however, doubtless as general
as those stricken, and we class it as coming under this rule
of law.

3. The discretion of the court in rejecting the two
new grounds, numbered 17 and 18, offered on the trial
with no satisfactory reason given for delay, will not be
controlled by this court, ample time having been given
for filing all, and the cause having been in court for years.

4. The auditor's report is *prima facie* evidence, and
the burden was on the exceptor to show error in it, and
to make good his exceptions.   When it was ordered filed,
and leave and time were given to except thereto, it became
such evidence.   47 *Ga.*, 414, and cases *passim.*   Code,
§§3138, 3097.

5. The burden being thus on the plaintiff in error,
there was no error in ruling that he lost the conclusion
when the county introduced no testimony, but only cross-
examined a witness, which cross-examination had been
temporarily suspended by the court in order to investi-
gate a legal point.   When the witness again took the

stand, he was still the witness of the exceptor, and his continued examination by the other side was a continuance of the cross-examination. He never was a witness of the county, introduced by it, so as to lose the right to conclude the argument.

6. We are unable to see how what the county treasurer said in his own behalf was admissible as testimony, simply because it was said by him when he turned over to appointees of the county commissioners his books for examination by them. They form no such part of the *res gestæ* as to be admissible on that ground, and surely are not on any other, but to admit them would be hearsay, and that hearsay by the party and in his own favor.

7. The court sustained the exception that twenty per cent. interest did not run against the treasurer, but entered judgment for seven per cent. Surely the plaintiff in error cannot except to this ruling. It is matter of law and it is for the court to rule on it. 47 *Ga.*, 414.

8. As we understand them, these are the points of law ruled by the court against the plaintiff in error. They are those only on which his counsel insist here by brief and argument. The remaining one is the usual, stereotyped ground, that the finding of the jury is against the evidence. That evidence has been before the auditor, who gave it a thorough investigation after careful deliberation. It has been thoroughly sifted by a jury before a learned and able judge, and re-examined by another judge equally competent to review the rulings of the presiding judge and the finding of the jury. It is more matter of calculation than anything else, and from such an examination of the figures as our limited time will allow us to make, we see no errors in it. Certainly none have been pointed out, and proved by the very able and experienced counsel who represented the plaintiff in error here.

When such a complicated account by a public officer dealing with the money of the people has been thus sifted, and stated by the repeated investigations of competent

tribunals, it must be a strong case, and the evidence of error clearly made to appear, before this court will interfere, and so it has been solemnly ruled.   64 *Ga.*, 711.

A public officer in custody of the funds of the public should b�  able at any time to exhibit an account of every cent of which he is the custodian, so that an accountant would have an easy task to see from his books the credits and debits and strike a balance between them, and a jury of his county could easily exonerate him from the charge of waste or corruption, inaccuracy or want of skill in the duties he assumed.  If this officer had so managed the money of this county, by simply doing what the law required of him, there would have been no trouble to himself or his sureties.  As it is, he must suffer for his own default, and his sureties must make good their bond to save the county harmless.

9. In conclusion we desire to say, in the hope that our views may reach at least the lawyers of the general assembly, that the present case is a strong illustration of the importance, not to say the necessity, of legislation in respect to the mode of bringing transcripts of the record of causes to this court.  Often, quite often, it is so hard to decipher what is written, to get at the real merits of cases, from the incompetency of clerks of the superior courts, and the inattention of counsel to the record when transmitted here before their cases are argued, that this court has to move much in the dark. The law-making power of the state has been pleased to say to the effect that no rule of this court shall operate to dismiss a case, no matter how unintelligently the grounds of error are exhibited, how badly the facts of the case are written, how inaccurate the paging, how obscure the case, so that the labors of this court, always onerous, are increased one hundred fold.  Something should be done to remove the evil.  The record should be clear and intelligible—either *printed*, which would be far preferable, or written in a plain, readable hand, and some

power should be given the court to control its proceedings and to enforce the necessary rules of practice it may adopt. Required by the constitution to decide cases speedily, the remedy of sending the record .back to be perfected is wholly inadequate, and the court is powerless, under the fetters which bind it, to guard against the evil alluded to, and to enforce the rules it has adopted. We venture to say that there is not in the civilized world an appellate court required to investigate and adjudge cases in the last resort with such blurred and blotted, such confused and unintelligible, such interlined and ill-paged records, such hopelessly obscure and inexplicable transcripts, divided into different parts, and written in all manner of hand-writing—some with half a page written and the rest blank, some with the whole of one page blank and two lines on the next written, and such abstracts of pleadings and evidence, as those which meet the eyes of this court at every term.

The honor of the state, the pride every man should have in the administration of justice in it, in the last resort, revolt at this rickety condition of things; and it is hoped that the legislature, if it shall continue to deny the power to the court to remedy the evil, will find some available mode of doing so itself.

Judgment affirmed.